IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| ANTHONY WRIGHT, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>    Defendant. )<br>_____) | Civil No. 3:14cv753 (REP) |

## REPORT AND RECOMMENDATION

Anthony Wright ("Plaintiff") is thirty-four years old and previously worked as a courtesy associate in retail and a cleaner at a bookstore. On January 20, 2004, Plaintiff applied for Social Security Disability Insurance Benefits ("DIB") and was found eligible beginning January 2003. On July 21, 2007, Plaintiff was notified that his disability ceased as of June 3, 2007, due to work activity. Plaintiff requested reinstatement of DIB on July 14, 2010, pursuant to Section 223(i) of the Social Security Act ("Act"). Plaintiff's request was denied both initially and upon reconsideration. On October 16, 2012, Plaintiff (represented by counsel) and a vocational expert ("VE") appeared at a hearing before an Administrative Law Judge ("ALJ"). The ALJ subsequently found that Plaintiff was no longer disabled in a written decision issued on October 22, 2012. On September 4, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), alleging that the ALJ erred in finding that Plaintiff's need for additional supervision was consistent with the ability to work competitively in national economy. (Mem. in Supp. of Mot.

for Summ. J. ("Pl.'s Mem.") (ECF. No. 12) at 6-9.) Defendant argues that substantial evidence supports the ALJ's decision. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof ("Def.'s Mem") (ECF. No. 13) at 6-9.)

This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment that are now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 11) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Plaintiff only argues that the ALJ erred in concluding that Plaintiff could perform a significant number of jobs in the national economy based on the VE's testimony. Plaintiff does not dispute the ALJ's other findings and conclusions. (Pl.'s Mem. at 3.) Accordingly, only the VE's testimony is summarized below.

On October 16, 2012, the VE testified that Plaintiff was working as a courtesy clerk at Walmart and that he previously worked at a bookstore as a cleaner. (R. at 338.) The ALJ then asked the VE to assume that an individual with no exertional limitations, who interacted with the public no more than ten percent of the time, occasionally interacted with peers and supervisors, was limited to the performance of simple, routine tasks, was off task ten percent of the time, could only perform minimal paperwork and needed supervision at least once an hour to keep him on task. (R. at 338.) The ALJ asked if jobs existed for such a hypothetical person. (R. at 339.)

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

The VE responded that the person could perform a job as an assembler at the medium, unskilled level, and that over 9,000 of those positions existed in Virginia with over 650,000 of those positions in the United States. (R. at 339-40.) The VE also responded that the person could perform a job as a packer at the medium, unskilled level, and that over 4,000 of those positions existed in Virginia with over 165,000 of those positions in the United States. (R. at 340.)

On cross-examination, Plaintiff's attorney asked the VE whether an individual with various severe mental impairments, including "the ability to sustain ordinary routines without supervision," could engage in substantial gainful activity. (R. at 341-42.) The VE responded that such a person would not be able to do so, explaining that sustaining routines without supervision was indicative of supportive employment. (R. at 342.) The VE clarified that when one needs special supervision, it is not competitive employment. (R. at 342.)

Plaintiff's attorney later asked the VE whether having a supervisor check on a worker at least once an hour to stay on task was special supervision. (R. at 348.) The VE responded that the answer would depend on the job. (R. at 348.) With a job such as an assembler and a packer, supervisors typically remained in the area to check and make sure that production quotas are being met, and such supervision would not be special. (R. at 348.) Plaintiff's attorney asked whether a situation in which a supervisor came in and stayed with the worker to keep him on task, rather than to check on quotas, would be considered "special supervision." (R. at 348.) The VE testified that particular situation would be considered special supervision. (R. at 348.)

## II.   PROCEDURAL HISTORY

On November 1, 1992, Plaintiff began receiving Supplemental Security Income ("SSI") under the Act as an eleven-year-old child, based on an application filed on his behalf on November 17, 1992. (R. at 24.) Plaintiff's disability was determined to have continued after a

review dated August 11, 1999. (R. at 24.) Plaintiff's claim was reviewed again in July 2003, and his disability was determined to have continued due to a mental impairment. (R. at 24.) He applied for DIB on January 20, 2004, and was found eligible beginning January 2003. (R. at 24.) Plaintiff had started working and earned sufficient wages to obtain insured status on his Social Security Record. (R. at 24.) Because of his earnings, Plaintiff was deemed to have performed substantial gainful activity ("SGA"). (R. at 24.) On July 21, 2007, Plaintiff was notified that his disability ceased due to work activity. (R. at 24.)

Plaintiff requested reinstatement of DIB on July 14, 2010, pursuant to Section 223(i) of the Act. (R. at 24.) On January 27, 2011, his request for reinstatement was denied. (R. at 24.) On August 4, 2011, the denial of reinstatement was affirmed after reconsideration. (R. at 24.) On October 16, 2012, Plaintiff (represented by counsel) and a VE appeared at a hearing before an ALJ. (R. at 25.) The ALJ subsequently found that Plaintiff was no longer disabled in a written decision issued on October 22, 2012. (R. at 37.) On September 4, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. at 5.)

### III. QUESTION PRESENTED

Did the ALJ err in finding that Plaintiff was able to perform a significant number of jobs in the national economy considering his age, education, work experience and RFC?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th

Cir. 2005)). Substantial evidence is more than a scintilla but less than a preponderance, and is the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)) (internal quotation marks omitted). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). The substantial evidence standard presupposes "a zone of choice" allowing a decision-maker to go either way, and the ALJ's decision "is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn v. Colvin*, ___ F. App'x ___, 2015 WL 3451568, at *2 (4th Cir. June 1, 2015) (unpublished) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Although the standard is high, if substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

An eight-step sequential evaluation of a claimant's work and medical history is required to determine if a claimant continues to be disabled under the Act. 20 C.F.R. § 404.1594(f). An ALJ conducts the analysis for the Commissioner, and a court must examine that process on appeal to determine whether the ALJ applied the correct legal standards and whether substantial evidence in the record supports the resulting decision of the Commissioner. *Guiton v. Colvin*, 546 F. App'x. 137, 140-141 (4th Cir. 2013) (unpublished). The claimant bears the proof of burden in the process, except at the last of the eight steps. *Id.* at 141.

At step one, the ALJ must determine whether the claimant is currently engaging in SGA. 20 C.F.R. § 404.1594(f)(1). If the claimant is performing SGA and any applicable trial work period has been completed, the claimant is no longer disabled. *Id.* At step two, the ALJ must determine whether the claimant's impairments meet or equal the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I, rendering his impairments severe. 20 C.F.R. § 404.1594(f)(2). At step three, the ALJ must determine whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). At step three, the ALJ must determine whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4). If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five, but if medical improvement is related to the claimant's ability to work, the analysis skips to the sixth step.

At step five, the ALJ must determine whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). If no exception applies, the claimant's disability continues. *Id.* At step six, the ALJ must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If the impairments are not severe, the claimant is no longer disabled. If the impairments are severe, then the analysis proceeds to the

next step. At step seven, the ALJ must determine whether the claimant has the RFC to perform any of his past relevant work. 20 C.F.R. § 404.1594(f)(7). At step eight, if the claimant is unable to engage in work performed in the past, the ALJ must determine whether the claimant can perform other work existing in the national economy. 20 C.F.R. § 404.1594(f)(8).

## V. ANALYSIS

### A. The ALJ's Decision

On October 16, 2012, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 284-389.) On October 22, 2012, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Act. (R. at 24-37.) The ALJ followed the eight-step process for determining whether an individual is entitled to continued disability insurance benefits. (R. at 25-26.)

At step one, the ALJ found that Plaintiff had not engaged in SGA through June 1, 2011, the date that Plaintiff's disability ended. (R. at 26.) As of June 1, 2011, Plaintiff had the following medically determinable impairments: Asperger's syndrome, attention deficit hyperactivity disorder, a personality disorder with narcissism and avoidant personality traits, obsessive compulsive disorder, low average functioning and obesity. (R. at 27.) At step two, the ALJ determined that since June 1, 2011, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 27.) At step three, the ALJ determined that medical improvement occurred as of June 1, 2011. (R. at 28.) At step four, the ALJ concluded that the medical improvement was related to the ability to work, because, as of June 1, 2011, Plaintiff's disability no longer met or medically equaled the same listing that was met in August 1999. (R.

at 29.) The ALJ skipped step five, because Plaintiff's medical improvement was related to Plaintiff's ability to work. (R. at 29.)

At step six, the ALJ determined that Plaintiff continued to have severe impairments that caused more than minimal limitations in Plaintiff's ability to perform basic work activities. (R. at 29.) At step seven, the ALJ determined that, based on the impairments presented as of June 1, 2011, Plaintiff had the RFC to perform medium work due to his obesity. (R. at 29.) The ALJ found that Plaintiff could sit up to six hours and stand or walk up to six hours in an eight-hour workday, lift twenty-five pounds frequently and fifty pounds occasionally. (R. at 29.) The ALJ also found that due to Plaintiff's combined psychiatric impairments, he could understand, remember and carry out simple, routine tasks in jobs entailing minimal paperwork, could occasionally interact with peers and supervisors with those supervisors checking on task completion once each hour, could interact with the public ten percent of the time and would be off task ten percent of the time during the workday. (R. at 29.) At step eight, the ALJ determined that as of June 1, 2011, considering the claimant's age, education, work experience, and RFC, Plaintiff was able to perform a significant number of jobs in the national economy. (R. at 36.) The ALJ concluded that Plaintiff's disability ended as of June 1, 2011, and, therefore, he is not entitled to reinstatement of DIB. (R. at 36.)

Plaintiff challenges the ALJ's decision on one ground. Plaintiff argues that the ALJ erred in concluding that there are jobs that Plaintiff can perform, considering his age, education, work history and RFC, based on the VE's testimony. (Pl.'s Mem. at 6-9.) Defendant responds that substantial evidence supports the ALJ's reliance on the VE's testimony. (Def.'s Mem. at 6-8.)

8

B. The ALJ did not err in finding that there are a significant number of jobs in the national economy that Plaintiff can perform.

Plaintiff argues that the ALJ erred by incorrectly concluding that a person's ability to work with special supervision was tantamount to the ability to work. (Pl.'s Mem. at 8-9.) Defendant responds that the ALJ correctly relied on the VE's testimony to conclude that Plaintiff could perform other work that exists in the national economy. (Def.'s Mem. at 6-8.)

1. Close supervision is a limitation, but it does not preclude Plaintiff from having residual capacity to work.

Plaintiff does not dispute the ALJ's finding that Plaintiff has an impairment that requires him to have a supervisor check on him every hour. Rather, Plaintiff appears to argue that such impairment precludes him from engaging in any work. This argument is without merit, because Plaintiff's need for close supervision does not completely prevent him from engaging in SGA.

At the seventh step of the sequential analysis, the ALJ assesses Plaintiff's RFC based on all of his current impairment s, including "severe" impairments. 20 C.F.R. § 404.1594(f)(7). The ALJ then uses the RFC to determine whether Plaintiff can engage in work that he has done in the part or other work in the national economy. 20 C.F.R. § 404.1594(f)(7)-(8). An individual's need for close or additional supervision is a nonexertional limitation, because it "affects [Plaintiff's] ability to meet the demands of jobs other than the strength demands." 20 C.F.R. §404.1569a(c)(1). Plaintiff can have residual capacity despite the limitation of requiring close or additional supervision, because RFC "represents the most that an individual can do despite his or her limitations or restrictions." SSR 96-8p. An ALJ must properly incorporate the limitation into the RFC assessment and in the hypotheticals to the VE, but there is no *per se* rule that deems an individual disabled simply because he needs close supervision. *See Smith v. Colvin*, 9 F.Supp.3d 875, 888 (E.D. Wis. 2014) (holding that ALJ who found a claimant would

need close supervision and guidance in any employment must adopt and incorporate such limitation into her RFC and in her hypothetical to the VE). Consequently, Plaintiff's need to have a supervisor check on him every hour does not preclude him from having the RFC to work. *See, e.g., Arsich v. Comm'r of Soc. Sec.*, 2015 WL 3735418, at *2 (E.D. Cal. July 28, 2014) (affirming ALJ's RFC determination that incorporated a claimant's need to have "a supervisor checking his work once per hour during the workday").

  2. The ALJ was correct in concluding that there are other jobs that Plaintiff can perform in the national economy based on the VE's testimony, because the ALJ properly assessed Plaintiff's RFC and incorporated it into the hypothetical to the VE.

Because Plaintiff can have residual capacity to work despite an impairment that requires close or additional supervision, the issue becomes whether the ALJ properly assessed the RFC and incorporated it into the hypothetical to the VE. Plaintiff does not dispute the ALJ's assessment of Plaintiff's RFC, so the only remaining issue is whether the RFC was properly incorporated into the hypothetical to the VE.

At the eighth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant can perform other work that is available in significant numbers in the national economy. 20 C.F.R. § 404.1594(f)(8). The Commissioner can carry her burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence in the record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Walker*, 889 F.2d at 50.

During a hearing on October 16, 2012, the ALJ posed several hypotheticals to the VE. The ALJ first asked the VE to assume that an individual with no exertional limitations interacted with the public no more than ten percent of the time, who occasionally interacted with peers and supervisors, was limited to the performance of simple, routine tasks, was off task ten percent of the time, could only perform minimal paperwork and needed supervision at least once an hour to keep him on task. (R. at 338.) The ALJ asked if jobs existed jobs for such a hypothetical person. (R. at 339.) The VE responded that the person could work as an assembler at the medium, unskilled level, and that there are over 9,000 positions in Virginia and over 650,000 in the United States. (R. at 339-40.) The VE responded that the person could also work as a packer at the medium, unskilled level, and that there are over 4,000 positions in Virginia, and over 165,000 in the United States. (R. at 340.)

Plaintiff's attorney then asked the VE whether an individual with various severe mental impairments, including "the ability to sustain ordinary routines without supervision," could engage in SGA. (R. at 341-42.) The VE responded that the person would not be able to engage in SGA, because sustaining ordinary supervision or routines without supervision was indicative of supportive employment. (R. at 342.) The VE clarified that when one needs special supervision, he was not in competitive employment. (R. at 347.) Plaintiff's attorney also asked the VE whether having a supervisor check on a worker at least once an hour to keep a worker on task amounted to special supervision. (R. at 348.) The VE responded that the answer would depend on the job. (R. at 348.)

Plaintiff mischaracterizes the VE's testimony when he notes that "[t]he Vocational Expert clarified that an individual's need to have a supervisor coming in once an hour to keep the individual on task is 'special supervision' which is not consistent with competitive work." (Pl.'s

11

Mem. at 7.) When the VE testified that a certain situation constitutes supportive employment or special supervision, he was responding to the hypothetical questions posed by Plaintiff's attorney. (R. at 342, 348.) Even still, his responses to Plaintiff's attorney provide direct support for the fact that Plaintiff could work as an assembler or packer despite the need for close supervision. (R. at 348.)

The VE never testified that the situation contemplated in the hypothetical question posed by the ALJ would constitute supportive employment or special supervision. In fact, the ALJ's hypothetical included the need for hourly supervision. (R. at 338.) The VE testified that he specifically named the jobs of assembler and packer, because these jobs typically already have supervisors in the work area. (R. at 348.)

The Plaintiff does not challenge the ALJ's factual findings regarding Plaintiff's age, education and work experience. The Plaintiff also does not challenge the ALJ's RFC assessment. Furthermore, the Plaintiff does not challenge the sufficiency of the hypothetical questions posed by the ALJ. The VE responded to the ALJ's hypothetical question that Plaintiff could perform jobs as an assembler and a packer, and that a significant number of these jobs existed in the national economy. Therefore, the ALJ was entitled to rely on the VE's testimony and did not err in relying on the VE's testimony and finding that, based on Plaintiff's age, education, work experience and RFC, Plaintiff was able to perform a significant number of jobs in the national economy.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 11) be DENIED, that Defendant's Motion for

Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: <u>September 18, 2015</u>

13